**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BCE West, L.P. | No. 06-0325-PHX-JAT |
| Debtor. | **ORDER** |
| Ace Insurance Company, Ltd., Bailey Cavalieri, Daniel Bailey, | |
| Appellants, | |
| vs. | |
| Plan Trustee Gerald K. Smith, BC Real Estate Investments, Inc., Scott A. Beck, Peer Pedersen, | |
| Appellees. | |

Pending before the Court is ACE Insurance Company, Ltd., Bailey Cavalieri, LLC, and Dan Bailey's ("Appellants") appeal from the bankruptcy court's February 28, 2006, Order.

**I.     BACKGROUND**

On October 5, 1998, Boston Chicken, Inc., ("BCI") and several of its affiliates filed Petitions for Reorganization under Chapter 11 in the U.S. Bankruptcy Court for the District of Arizona. On May 3, 2000, BCI and its affiliates filed their Third Amended Plan ("Plan"), which provided, *inter alia*, for the sale of certain assets to a third party and for the appointment of a Plan Trustee. On May 15, 2000, the bankruptcy court confirmed the Plan

and appointed Gerald K. Smith as Trustee for the estates of BCI and its affiliates. As part of the Plan, the Trustee was charged with the collection and administration of the Retained Assets, which included claims, causes of action, and insurance policies not transferred to the third party purchaser of BCI's operational assets. The Retained Assets included all liability insurance policies insuring BCI's directors and officers.

In February, 2001, the Trustee commenced litigation in the United States District Court for the District of Arizona on behalf of BCI and against various parties, including former directors and officers of BCI. The Trustee's action alleged, *inter alia*, that the former directors and officers conspired to misrepresent BCI's financial condition to artificially sustain BCI long past its insolvency point. In or about 2004, the Trustee settled with some of the former directors and officers. Via the settlements, the Trustee received an assignment of the former directors and officers' rights against ACE Insurance Company, Ltd. ("ACE").

ACE is an insurance company incorporated and headquartered in Bermuda. At all relevant times, ACE had in effect a liability insurance policy covering BCI's directors and officers ("D&O policy").[1] The D&O policy, which provides seventh layer excess coverage, includes an arbitration clause providing, in part:

> Any dispute arising under or relating to this policy, or the breach thereof, shall be finally and fully determined in Hamilton, Bermuda under the provisions of the Bermuda Arbitration Act of 1986, as amended and supplemented, by an Arbitration Board composed of three arbitrators who shall be disinterested and active or retired business executives having knowledge relevant to the matters in dispute[.]

After settling with the former directors and officers, and receiving the assignment of the former directors and officers' rights against ACE, the Trustee demanded payment from ACE. For numerous reasons not relevant to this appeal, ACE denied coverage.[2]

---

[1] The D&O policy bears Policy No. BOST-7925D.

[2] ACE represents that as early as September 2001, it had advised the former directors and officers that the Trustee's action was excluded from coverage under the terms of the

- 2 -

On March 22, 2005, ACE, through its Bermuda counsel, filed an action in the Supreme Court of Bermuda against the Trustee and BCI's former directors and officers ("the "Bermuda action"). In the Bermuda action, ACE sought an order enjoining defendants from commencing any action against it with respect to the D&O policy, other than arbitration as provided in the policy, and awarding it damages and costs.[3] The Bermuda action was supported in part by affidavits executed by Dan Bailey and Robert Eblin of the Bailey Cavalieri law firm, who were serving as ACE's U.S. coverage counsel. ACE obtained the requested injunction *ex parte*.

On March 31, 2005, after receiving the *ex parte* injunction and a notice of arbitration, the Trustee's counsel sent notice to ACE advising it that the D&O policy is the property of BCI's bankruptcy estate and that the *Barton* doctrine prohibits suit against the Trustee unless prior permission is obtained from the bankruptcy court.[4] The Trustee's counsel also advised ACE's counsel of the intention to file an adversary complaint seeking an injunction against ACE as well as damages for anticipatory breach of contract, breach of contract, contempt and violation of the *Barton* doctrine against ACE and its U.S. coverage counsel, Bailey Cavalieri, LLC.

On April 18, 2005, the Trustee filed an adversary complaint in the U.S. Bankruptcy Court for the District of Arizona, naming as defendants ACE, its U.S. coverage counsel, Dan

---

D&O policy.

[3] The claim for damages and costs was subsequently stricken by ACE on April 22, 2005.

[4] *See Barton v. Barbour*, 104 U.S. 126, 136-37 (1881) ("[W]hen the court of one State has . . . property in its possession for administration as trust assets, and has appointed a receiver to aid it in the performance of its duty by carrying on the business to which the property is adapted . . . a court of another State has not jurisdiction, without leave of court by which the receiver was appointed, to entertain a suit against him[.]). Further, the Trustee represents that he informed ACE counsel, prior to the filing of the Bermuda action, of the existence of the *Barton* doctrine and its application herein.

Bailey and Bailey Cavalieri, LLC, and its Bermuda counsel, Conyers Dill & Pearman. The Trustee sought injunctive relief and a contempt finding against all defendants, and asserted a breach of contract/anticipatory breach of contract claim and bad faith claim against ACE. The Trustee also sought declaratory relief concerning coverage under the D&O policy. All defendants moved to dismiss.

The bankruptcy court, in its August 20, 2005, Under Advisement Decision Re: Motions to Dismiss, denied ACE's motion to dismiss for lack of personal jurisdiction and granted Conyers Dill & Pearman's motion to dismiss for lack of personal jurisdiction.[5] The bankruptcy court also concluded that to the extent this case implicates the D&O policy and its proceeds, the bankruptcy court has exclusive *in rem* jurisdiction, but that all issues relating to the D&O policy, including policy exclusions, exhaustion of senior coverages, repudiation, and bad faith, would be within the scope of the arbitration proceeding. Finally, the bankruptcy court concluded that the fact of BCI's bankruptcy, as required by the *Barton* doctrine, imposed upon ACE the obligation to seek leave of court before filing suit against the Trustee; that contempt is an appropriate remedy for a violation of the *Barton* doctrine leave requirements; and that issues of comity, in the absence of ACE's request for leave to proceed against the Trustee outside of the bankruptcy court, do not require deferral to the Bermuda court.[6]

On August 22, 2005, after the parties received notice of the bankruptcy court's August 20, 2005 decision, a hearing was held in the Bermuda court on the Trustee's motion to dismiss the Bermuda proceedings and the *ex parte* injunction. ACE did not seek to dismiss

---

[5] While Appellants' Motion for Leave to Appeal to the District Court (Doc. # 2) states the intention to appeal the bankruptcy court's exercise of *in personam* jurisdiction over ACE, the exercise of *in personam* jurisdiction is not formally challenged in Appellants' briefs.

[6] However, the bankruptcy court did provide that it "could well conclude, after fully (sic) consideration of the parties' positions if and when leave is sought by ACE, that arbitration in Bermuda, as previously agreed to by ACE and BCI, is the appropriate method and venue for resolution of the coverage and related disputes."

- 4 -

the Bermuda proceedings as a result of the bankruptcy court's August 20, 2005, decision. Instead, ACE defended itself against the motion to dismiss. After the hearing, the Bermuda court denied the Trustee's motion to dismiss and declined to accord any deference to the bankruptcy court's jurisdiction.

On August 26, 2005, ACE filed in the bankruptcy court a Motion to Compel Arbitration, or in the alternative, for Leave to Proceed in Bermuda. In response, the Trustee filed motions for injunctive relief and sanctions against ACE, Dan Bailey, and Bailey Cavalieri, LLC. The bankruptcy court, in its January 10, 2006, Under Advisement RE: Motion to Compel; Motion for Injunctive Relief; Motion for Sanctions, granted ACE's motion to compel arbitration, but, citing *Barton*, ordered arbitration on terms different than those contained in the D&O policy.[7] The bankruptcy court also enjoined ACE from further prosecuting the Bermuda action and mandatorily enjoined ACE to dismiss it. In addition, the bankruptcy court retained jurisdiction over any future issues concerning enforcement of the arbitration agreement, the appointment of a third arbitrator, and similar issues. Finally, the bankruptcy court imposed sanctions of $100,000.00 against ACE, Dan Bailey, and Bailey Cavalieri, LLC. On February 28, 2006, the bankruptcy court incorporated its August 20, 2005, and January 10, 2005, decisions into a formal Order.[8] It is from the February 28, 2006, Order, and the supporting decisions, that ACE, Dan Bailey, and Bailey Cavalieri, LLC, appeal.

---

[7]While the D&O policy provided for arbitration in Hamilton, Bermuda, the bankruptcy court's order provided for arbitration in Phoenix or New York, with each party to bear their own costs, or in Bermuda or another mutually agreed upon non-U.S. venue, with ACE being responsible for the Trustee's incremental costs. And, while the D&O policy provided a framework for the enforcement of the arbitration agreement and the appointment of arbitrators, the bankruptcy court retained jurisdiction over "any future issues concerning enforcing the agreement, appointing a third arbitrator, or the like.

[8]While not contained in the August 20, 2005, and January 10, 2005, decisions, the February 28, 2006, Order provides that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

- 5 -

## II. LEGAL STANDARD AND ANALYSIS

### A. Jurisdiction

The Court has jurisdiction over a bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1), which provides that "district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." The Trustee argues that the Court lacks jurisdiction to hear the appeals from two of the bankruptcy court's orders.[9]

First, the Trustee, citing 9 U.S.C. § 16(b), argues that the Court lacks jurisdiction to review the order granting ACE's motion to compel arbitration. The Trustee is correct in that section 16(b) provides that an appeal may not be taken from an interlocutory order "directing arbitration to proceed under section 4 of [Title 9]" or "compelling arbitration under section 206 of [Title 9]." *See* 9 U.S.C. §§ 16(b)(2) and (3). However, as argued by Appellants, the Court has pendant appellate jurisdiction over the order compelling arbitration because it is "inextricably intertwined" with the injunction prohibiting ACE from further prosecuting the Bermuda action. *See Meredith v. Oregon*, 321 F.3d 807, 811-16 (9th Cir. 2002) ("[A]ppellate courts may review rulings that are 'inextricably intertwined' with or 'necessary to ensure meaningful review of' decisions over which we have jurisdiction.") (citations omitted); *Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1379 (9th Cir. 1997) (An interlocutory order compelling arbitration is appealable if it is "inextricably bound up with an injunction order.") (citations omitted). The bankruptcy court's arbitration order and the injunction, as well as the related retention of jurisdiction over the enforcement of the arbitration agreement, are dependent on the bankruptcy court's proper exercise of jurisdiction over the insurance coverage dispute under 28 U.S.C. § 157(b)(2). If the Court finds that the

---

[9]The parties do not dispute that the Court has jurisdiction over the appeal of the injunction prohibiting ACE from prosecuting the Bermuda action. *See Kontrabecki v. Olinar*, 318 B.R. 175, 180 (N.D. Cal. 2004).

- 6 -

bankruptcy court improperly exercised jurisdiction over the insurance coverage dispute under 28 U.S.C. § 157(b)(2), then it follows that the bankruptcy court erred in not only issuing the injunction and retaining jurisdiction over enforcement of the arbitration agreement, but also in compelling arbitration on terms different than those contained in the D&O policy.[10]

Second, the Trustee argues that the Court lacks jurisdiction to review the award of sanctions, citing *Kirkland v. Legion Insurance Company*, 343 F.3d 1135 (9th Cir. 2003). In *Kirkland*, the court stated that "[o]rders of civil contempt entered against a party during the course of a pending civil action are not appealable until final judgment." *Kirkland*, 343 F.3d at 1140 (citation omitted). However, the *Kirkland* court also recognized that a civil contempt order incident to an appealable order is itself appealable. *Id.* ("[B]ecause we conclude that the March 29 order is of sufficient finality to be appealable, the May 24 civil contempt order is in turn appealable," *citing Dollar Rent a Car v. Travelers Indem. Co.*, 774 F.2d 1371, 1376 (9th Cir. 1985) ("[A]n appeal of a civil contempt order is permissible when it is incident to an appeal from a final order or judgment, including an underlying preliminary injunction.")). Accordingly, because the sanction award is incident to the appeal from the injunction enjoining ACE from further prosecuting the Bermuda action, the sanction award is appealable.[11]

---

[10] Additionally, the Court would grant the appeal on judicial economy grounds because arbitration was designed to avoid the costliness of litigation. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974). Should the parties proceed to arbitrate according to the bankruptcy court's order, any subsequent appeal of the bankruptcy court's order could result in a reversal and the re-arbitration of the insurance coverage dispute in the forum identified in the arbitration agreement.

[11] Because the Court has found that it has jurisdiction over the issues on appeal under 28 U.S.C. § 158(a)(1), Appellants' Motion for Leave to Appeal to the District Court (Doc. # 2) will be granted.

- 7 -

B. Core versus Non-Core Proceeding

In its February 28, 2006, Order, the bankruptcy court concluded, without any analysis, that "[t]his is a core proceeding pursuant to 28 U.S.C. 157(b)(2)."[12] On appeal, Appellants argue that Ninth Circuit case law mandates a finding that the insurance coverage dispute is a non-core proceeding. After review of the issue, the Court agrees.[13]

A non-exclusive list of core proceedings is contained in 28 U.S.C. § 157(b)(2). The core proceedings listed in sections 157(b)(2)(B)-(N) are specific and are not relevant to the insurance coverage dispute at issue herein. However, sections 157(b)(2)(A) and (O), the "catch-all" provisions, are more general in nature. They encompass "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." *See* 28 U.S.C. §§ 157(b)(2)(A) and (O), respectively. Although broadly drafted, the Ninth Circuit narrowly construes the "catch-all" provisions, stating:

> [S]tate law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)-(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional.

*In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986). Evolved from this narrow construction is the Ninth Circuit's general test for classifying a proceeding as non-core, which provides that "[a]ctions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'" *Security Farms v. International*

---

[12] While the Court would prefer to have the benefit of the bankruptcy court's analysis, the lack thereof is of no real significance because the bankruptcy court's core determination is subject to *de novo* review. *See In re G.I. Industries, Inc.*, 204 F.3d 1276, 1279 (9th Cir. 2000).

[13] The import of the core/non-core issue is evidenced in *In re Castlerock*, 781 F.2d 159, 161 (9th Cir. 1986), which stated, with regard to bankruptcy courts, that the "'essence of the jurisdictional system' is the distinction between core and noncore matters." (Citations omitted).

- 8 -

*Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997), *citing In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986). Pursuant to this jurisprudence, an insurance coverage dispute, involving a post-petition breach of a pre-petition contract, is a non-core proceeding. *See In re Daewoo Motor America, Inc.*, 302 B.R. 308, 312-13 (C.D. Cal. 2003); *see also In re Gurga*, 176 B.R. 196, 199 (9th Cir. BAP 1994) (confirming that a state law breach of contract claim is a non-core proceeding).

In filing the adversary proceeding, the Trustee sought to enjoin Appellants from prosecuting the Bermuda action, which involved ACE's attempt to compel arbitration of the insurance coverage dispute pursuant to the D&O policy's terms. The Trustee also sought a contempt finding against Appellants for ACE's failure to seek leave of the bankruptcy court prior to the filing of the Bermuda action. Further, the Trustee asserted a breach of contract/anticipatory breach of contract claim and bad faith claim against ACE for failing to provide coverage under the D&O policy. Finally, the Trustee sought a declaration that the D&O policy provided coverage for the claims asserted against the former directors and officers. As the foregoing undeniably evidences, the matter underlying the relief sought and the claims made in the Trustee's adversary proceeding is the insurance coverage dispute involving the D&O policy. This dispute is the proper focus of the core/non-core determination. Accordingly, under prevailing Ninth Circuit case law, the Court finds that the adversary proceeding, and specifically the insurance coverage dispute, is a non-core proceeding.[14]

In support of the bankruptcy court's conclusion that the adversary proceeding is a core proceeding, the Trustee sets forth numerous arguments, all of which are unavailing. First, the Trustee states that the "only two causes of action now pending in the Trustee's adversary

---

[14]The Trustee cited Second Circuit case law in support of its argument that insurance coverage disputes are core proceedings. *See, e.g., In re U.S. Lines*, 197 F.3d 631 (2nd Cir. 1999). However, the Court has not been persuaded that the Second Circuit case law should be given effect over prevailing Ninth Circuit case law.

- 9 -

1  proceeding – for injunctive relief and contempt – must be considered core." This argument
2  is misguided because it focuses on the remedies that derive from the underlying matter.
3  Instead, it is the nature of the underlying matter to be enjoined or serving as the basis for
4  contempt that determines whether a proceeding is core or non-core. Otherwise, a bankruptcy
5  court, simply because injunctive relief or contempt is at issue, would have exclusive
6  jurisdiction over the underlying matter even if the underlying matter is non-core. This
7  contradicts *In re Jacksen*, 105 B.R. 542, 544 (9th Cir. BAP 1989), which provides that 11
8  U.S.C. § 105(a) authorizes a bankruptcy court to issue injunctions, but "does not, however,
9  broaden the bankruptcy court's jurisdiction, which must be established separately under 28
10 U.S.C. Sections 157 and 1334." (Citations omitted). In other words, a bankruptcy court's
11 power to issue an injunction is not an independent grant of exclusive jurisdiction. Similarly,
12 the *Barton* doctrine, the source of the Trustee's contempt relief, can only be interpreted to
13 authorize a bankruptcy court to sanction a party for failing to obtain leave prior to filing suit
14 against a trustee and not as an independent grant of exclusive jurisdiction over the underlying
15 matter.

16 Second, the Trustee argues that the "core/non-core issue here is not whether the
17 bankruptcy court will decide coverage; it is, rather, whether the Court's decision to order a
18 court-appointed trustee to arbitration is core or non-core." To the contrary, the issue here is
19 whether the insurance coverage dispute is a core or non-core proceeding and whether, as a
20 consequence, the bankruptcy court may modify the arbitration clause when compelling
21 arbitration. The Trustee's attempts to otherwise characterize the issue are unavailing.

22 Third, the Trustee argues that "Judge Case's order granting ACE's motion may not be
23 to ACE's liking, but, having specifically asked Judge Case to make an order regarding
24 arbitration, ACE is now in no position to assert that the Judge was without authority to do
25 so." This argument is without merit. By filing the motion to compel, ACE did not consent
26 to the bankruptcy court's assertion of exclusive jurisdiction over the insurance coverage
27 dispute and the modification of the arbitration agreement contained in the D&O policy. ACE
28

only sought an order compelling the Trustee to arbitrate, according to the terms of the arbitration agreement, because the bankruptcy court had previously held that the *Barton* doctrine required such action. If anything, ACE only consented, as necessary under the *Barton* doctrine, to the bankruptcy court determining whether or not the arbitration should be allowed to proceed.

Finally, the Trustee argues that the insurance coverage dispute is a core proceeding because the dispute involves a breach of a post-petition contract. This argument is without merit. The D&O policy's initial policy period was December 5, 1995 to December 5, 1997. BCI's bankruptcy was filed on October 5, 1998. The D&O policy is a claims made policy and provides that multiple claims based on the same conduct are all deemed to have been made as of the date of the earliest claim:

> Multiple claims based upon or arising out of the same, repeated, interrelated or causally connected Wrongful Acts, whether made against the same or different Insured Persons, shall be deemed to be a single claim first made in the earliest Policy Year in which the first of such multiple claims is made against any Insured Person.

The Trustee's suit against BCI's directors and officers, while filed post-petition, arose out of the same wrongful acts as alleged in the shareholder class action first filed against BCI's directors and officers in June 1997, during the first policy period and before bankruptcy was filed. Thus, under the terms of the D&O policy, the Trustee's claims are deemed to have been made pre-petition thereby implicating the pre-petition insurance contract.[15]

---

[15]Even if a post-petition contract was implicated, the Court would still not be persuaded that the insurance coverage dispute would be a core proceeding under the Ninth Circuit test. *See Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) ("Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'").

- 11 -

C. Impact of Non-Core Determination

After classifying the adversary proceeding as a core proceeding, the bankruptcy court compelled arbitration on terms materially different than the terms contained in the D&O policy's arbitration clause, enjoined the Bermuda proceedings, and retained jurisdiction to enforce certain provisions of the arbitration agreement.[16] Because the Court has reversed that determination, instead concluding that the adversary proceeding is a non-core proceeding, the Court must now address Appellants' argument that the bankruptcy court lacked authority to enjoin the Bermuda proceedings and alter the terms of the D&O policy's arbitration clause. After a review of relevant jurisprudence, the Court agrees with Appellants.

The majority of courts addressing non-core proceedings and the enforceability of arbitration clauses conclude that the arbitration agreement controls. For example, in *In re Gurga*, 176 B.R. 196 (9th Cir. BAP 1994), the panel reversed the bankruptcy court's refusal to stay an adversary proceeding in favor of arbitration. The panel concluded that the "underlying action," a breach of contract claim, was a non-core proceeding and that Congress did not "intend to make an exception to the Arbitration Act for noncore proceedings in bankruptcy cases." *In re Gurga*, 176 B.R. at 199. In support of this conclusion, the panel quoted *In re Mor-Ben Insurance Markets Corp.*, 73 B.R. 644 (9th Cir. BAP 1987), which affirmed the bankruptcy court's order to arbitrate various non-core actions:

> Neither the Bankruptcy Code nor its legislative history contain anything which would prevent a court of arbitration from

---

[16]For these rulings, the bankruptcy court relied on *Barton* and *In re Kashani*, 190 B.R. 875 (9th Cir. BAP 1995). Regarding *Barton*, the bankruptcy court stated that it provides the "jurisdiction to determine under what conditions [the arbitration] agreement may now be given force." The Court is not persuaded by the bankruptcy court's expansive reading of the *Barton* doctrine, which provides only that "leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). Absent a jurisdictional basis under 28 U.S.C. §§ 157 and 1334, the *Barton* doctrine does not confer on the bankruptcy court exclusive jurisdiction over the underlying matter.

- 12 -

> determining whether the insurers' claims are valid or whether any party has broken the contract. Thus, the fact that these issues arise in the context of a bankruptcy does not invalidate the agreement of the parties to have the dispute heard by an arbitrator in London.

73 B.R. at 648. Additionally, the *In re Gurga* panel reviewed the Bankruptcy Amendments and Federal Judgeship Act of 1984 and concluded that the amendments:

> [C]onfer on the district court original, but not exclusive, jurisdiction over noncore matters. Thus, it is clear that in 1984 Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court. We are mindful of the goal of the Arbitration Act to ensure judicial enforcement of privately made arbitration agreements . . . and that arbitration is a form of dispute resolution that finds favor in the courts.

*In re Gurga*, 176 B.R. at 200 (citations and internal quotes omitted).

Similarly, in *Hays & Co. v. Merrill Lynch, Pierce, Fenner and Smith*, 885 F.2d 1149 (3rd Cir. 1989), the Third Circuit reversed the district court's denial of a motion to compel arbitration, stating:

> The question with which we are presented is whether the trustee is bound by that agreement signed by the debtor before entering Chapter 11 bankruptcy. We hold that the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would the debtor.

885 F.2d at 1153. More recently, in *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104 (2nd Cir. 2006), the Second Circuit stated:

> Bankruptcy courts generally do not have discretion to refuse to compel arbitration of 'non-core' bankruptcy matters, or matters that are simply 'related to' bankruptcy cases. As to these matters, the presumption in favor arbitration usually trumps the lesser interest of bankruptcy courts in adjudicating non-core proceedings.

436 F.3d at 108 (citations omitted). Even as to core proceedings, the Second Circuit stated:

> [T]he bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that the arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code.

- 13 -

1  *Id.* (citations omitted).

2        The Court finds the foregoing jurisprudence persuasive. Accordingly, because the Trustee's adversary proceeding is non-core, the Court concludes that the bankruptcy court erred when it compelled arbitration on terms materially different than the terms contained in the D&O policy's arbitration clause.[17]

      As for the bankruptcy court's order enjoining the Bermuda action and retaining jurisdiction to enforce certain provisions of the arbitration agreement, the Court reaches a similar conclusion. The bankruptcy court relied on *In re Kashani*, 190 B.R. 875 (9th Cir. BAP 1995), to support the injunction and retention of jurisdiction. The panel in *In re Kashani* promulgated a five-factor analysis to determine "which claims should be tried in another forum." 190 B.R. at 887; *see In re Crown Vantage, Inc.*, 421 F.3d 963, 976 (9th Cir. 2005) (adopting the *In re Kashani* five-factor analysis). One of the factors requires the bankruptcy court to determine whether "the claims pertain to actions of the trustee while administering the estate." *Id.* at 886. This factor allows the bankruptcy court to further determine whether the proceeding is core or non-core. *Id.* As discussed above, the Ninth

---

[17]This conclusion is further supported the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985):

> The Arbitration Act provides that written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. §§ 3, 4. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

470 U.S. at 218.

- 14 -

Circuit narrowly construes what proceedings fall within the scope of 28 U.S.C. §§ 157(b)(2)(A), the "catch-all" provision involving "matters concerning the administration of the estate." *See In re Castlerock Properties*, 781 F.2d at 162. Further, the Ninth Circuit has clearly held that an insurance coverage dispute is a non-core proceeding. *See In re Daewoo Motor America, Inc.*, 302 B.R. at 312-13. Because the Trustee's adversary proceeding is non-core and does not fall within the scope of 28 U.S.C. §§ 157(b)(2)(A), the Court concludes that an injunction or retention of jurisdiction is not supported under *In re Kashani*.[18] Accordingly, the bankruptcy court erred when it enjoined the Bermuda action and retained jurisdiction to enforce certain provisions of the arbitration agreement.

D.    The *Barton* Doctrine and the Award of Sanctions

On motion of the Trustee, the bankruptcy court imposed sanctions in the amount of $100,000.00 against ACE, Dan Bailey, and Bailey Cavalieri, LLC. The sanctions were imposed for their failure to seek leave of the bankruptcy court prior to filing the Bermuda action against the Trustee, as required by the *Barton* doctrine. The sanctions are comprised of the incremental costs incurred by the Trustee for the hiring of Bermuda counsel, the hiring of a U.S. bankruptcy law expert, and travel expenses.[19]

Sanctions are an appropriate remedy for a violation of the *Barton* doctrine. *See In re DeLorean Motor Co.*, 991 F.2d at 1242 ("the Trustee must be given the opportunity to prove the amount of damages incurred" to defend against the *Barton* violating suit "including the necessity of the Trustee's complaint with the Bankruptcy Court."); *In re Premier Sports Tours*, 283 B.R. at 601 ("The willful and knowingly filing of a lawsuit in violation of the automatic stay still justifies the imposition of sanctions to compensate the estate for

---

[18] The Court further finds that an analysis of the other four *In re Kashani* factors does not justify a contrary conclusion.

[19] It appears that the bankruptcy court's award of sanctions also takes into consideration the fees incurred by the Trustee and his law firm, and the costs incurred by his local counsel, in defense of the Bermuda action.

- 15 -

1  additional expenses . . . incurred for attorneys' fees in connection with the [other]
2  litigation."). The bankruptcy court's award of sanctions is subject to an abuse of discretion
3  standard of review. *In re Hercules, Inc.*, 387 F.3d 1024, 1027 (9th Cir. 2004). Factual
4  findings supporting a sanctions award are reviewed under the clearly erroneous standard.
5  *FTC v. Alaska Land Leasing, Inc.*, 799 F.2d 507, 510 (9th Cir. 1986).

6  On appeal, Appellants advance three arguments in support of the reversal of the
7  sanctions award. First, Appellants argue that there has been no showing that they were on
8  sufficient notice that their conduct violated the *Barton* doctrine because the doctrine has
9  never been applied to a suit filed outside of the United States. As discussed, the *Barton*
10 doctrine requires that "leave of the appointing forum must be obtained by any party wishing
11 to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's
12 official capacity and within the trustee's authority as an officer of the court." *In re DeLorean*
13 *Motor Co.*, 991 F.2d at 1240. To the Court, the *Barton* doctrine is clear. There is no
14 indication that the doctrine is limited in scope or that it is otherwise inapplicable to a party
15 who seeks to file suit in an international forum.[20] Accordingly, regardless of where ACE
16 sought to file suit against the Trustee, the bankruptcy court correctly found that ACE was
17 required, under the *Barton* doctrine, to seek leave prior to filing suit.[21]

18 Further, contrary to Appellants' argument, *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003),
19 provides that the violation of a bankruptcy stay is not determined by the subjective belief or

---

[20] The only limitation found is contained in 28 U.S.C. § 959(a), which limitation has properly been found to be inapplicable herein.

[21] Even though the Court finds that the bankruptcy court erred when it compelled arbitration on terms different than those terms contained in the D&O policy, enjoined the Bermuda proceedings and altered the terms of the D&O policy's arbitration clause, the nature of the *Barton* doctrine indicates that there still can be a violation for the failure to seek leave prior to filing suit in another forum. Further, nothing in the Court's order is to be interpreted to divest the bankruptcy court of the jurisdiction to entertain a proceeding involving a violation of the *Barton* doctrine.

intent of the party. The Ninth Circuit stated that a "willful violation" was the key factor, requiring a "finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *In re Dyer*, 322 F.3d at 1191 (citations omitted). While the Ninth Circuit was addressing a violation of the automatic stay under 11 U.S.C. § 362, the same analysis should apply to a violation of the *Barton* doctrine, which itself is a form of a stay. *See In re DeLorean Motor Co.*, 991 F.2d at 1241 (characterizing the violation of the *Barton* doctrine as a violation of the stay); *In re Baptist Medical Center of New York*, 80 B.R. 637, 643 (E.D.N.Y. 1987) (same). The record clearly indicates that Appellants were aware of the *Barton* doctrine and that ACE intentionally filed the suit in a Bermuda court. That ACE may not have specifically intended to violate the doctrine is of no consequence.

Second, Appellants argue that Dan Bailey and Bailey Cavalieri, LLC (hereinafter "the Baileys") cannot be sanctioned because they did not represent ACE in the Bermuda action. Appellants further argue that Mr. Bailey only offered affidavit testimony used in the Bermuda action and that such action is insufficient to support contempt under the *Barton* doctrine. The Court agrees.

In its order, the bankruptcy court stated that the "conscious and continuing nature" of the Appellants' conduct justified the award of sanctions. The bankruptcy court further stated that the conduct at issue was comprised of "[d]efendants' conduct in bringing the Bermuda case" which violated the *Barton* doctrine and the "defendants further [ignoring of] *Barton* and [the bankruptcy court's] decision by not dismissing the Bermuda case." The bankruptcy court's order erroneously characterizes the Baileys as counsel of record for ACE in the Bermuda action. The Baileys did not bring the Bermuda action on behalf of ACE and did not fail to dismiss it on behalf of ACE. Mr. Bailey only executed factual affidavits for

- 17 -

submission to the Bermuda court.[22] Mr. Bailey served as a witness for ACE in the Bermuda action, not as its attorney, and the case law cited in support of sanctions against a party's attorney are distinguishable. *See In re Nathurst*, 207 B.R. 755, 758 (Bkrtcy. M.D. Fla. 1997); *In re Premier Sports Tours*, 283 B.R. 598, 600-01 (Bkrtcy. M.D. Fla. 2002).

The Trustee does cite one case in support of sanctions against a third party. *See In re Lickman*, 297 B.R. 162 (Bkrtcy. M.D. Fla. 2003). However, *In re Lickman* involved continuing and patently outrageous behavior on the part of the third party and is clearly inapposite to the Baileys' conduct herein. *In re Lickman*, 297 B.R. 171-86. Further, sanctioning a witness for merely providing factual testimony in a suit subsequently determined to be ill-conceived would certainly have a chilling impact on witness testimony. Accordingly, the Court concludes that the bankruptcy court erred when it sanctioned Dan Bailey and Bailey Cavalieri, LLC for the violation of the *Barton* doctrine.

Finally, Appellants argue that the amount of the sanctions award is arbitrary and not supported by the evidence. The Court disagrees. "In fashioning a compensatory sanction, the Court must tailor its award to the pecuniary injury caused by the unexcused conduct." *Kraszewski v. State Farm General Ins. Co.*, 130 F.R.D. 111, 113 (N.D. Cal. 1984) (citations omitted). "The amount necessary to compensate the aggrieved party may be estimated by the sanctioning court." *Id.* (citations omitted). An evidentiary hearing is not required "if the record and supporting affidavits are sufficiently detailed to provide an adequate basis for calculating an award" and "if the material facts necessary to calculate the award are not genuinely in dispute." *Sablan v. Dept. of Finance*, 856 F.2d 1317, 1322 (9th Cir. 1988).

As discussed, the sanctions award comprised the incremental costs incurred by the bankruptcy estate for the hiring of Bermuda counsel, the hiring of a U.S. bankruptcy law expert, and travel expenses. The Declaration of Gerald K. Smith and the Affidavit of

---

[22] The Court questions the Trustee's motives in naming the Baileys as defendants in light of the fact that Robert Eblin, another partner at Bailey Cavalieri, LLC, also executed an affidavit for submission to the Bermuda court, but was not named as a defendant.

Timothy J. Paris, and the attached exhibits, submitted in support of the Trustee's motion for sanctions, detail the expenses incurred by the Trustee in defending against the Bermuda action.[23] Specifically, the fees incurred by the Trustee's Bermuda counsel were $55,356.75. The Trustee also retained a U.S. bankruptcy law expert, Ralph Mabey, to assist in the defense of the Bermuda action. Mr. Mabey's fees were $34,431.30. In addition, travel expenses to Bermuda amounted to $5,921.31. Considering the $14,778.91 in fees incurred by the Trustee and his law firm, Lewis & Roca, and the $26,219.71 in costs incurred by Beus Gilbert, PLLC, the pecuniary injury caused by ACE's failure to first seek leave of the bankruptcy court exceeded $136,000.00. Accordingly, the Court does not finds that the bankruptcy court erred in awarding $100,000.00 in sanctions to the Trustee for ACE's violation of the *Barton* doctrine.

Accordingly,

IT IS ORDERED that Appellants' Motion for Leave to Appeal to the District Court (Doc. # 2) is GRANTED.

IT IS FURTHER ORDERED that Appellants' Motion for Transfer (Doc. # 55) is DENIED as moot.

IT IS FURTHER ORDERED that Appellants' Appeal is GRANTED in part and DENIED in part consistent with the above order. This matter is remanded to the bankruptcy court for further proceedings not inconsistent with this order.

IT IS FURTHER ORDERED that this order shall serve as the mandate in this case.

DATED this 20th day of September, 2006.

James A. Teilborg
United States District Judge

---

[23] The record indicates that ACE was given sufficient opportunity to defend against the motion for sanctions, thus satisfying the requirements of due process. *See Miranda v. Southern Pacific Transportation Co.*, 710 F.2d 516, 522-23 (9th Cir. 1983) (due process requires the opportunity to prepare a defense and explain questionable conduct at a hearing).